## A. S. ULRICH, EXR., v. A. REINOEHL ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LEBANON COUNTY.

Argued February 20, 1890.
Re-argued February 16, 1891—Decided October 5, 1891.
[To be reported.]

1. A creditor may lawfully take out a policy of insurance on the life of his debtor in an amount sufficient to cover the debt, with interest, and the cost of such insurance with interest thereon, during the period of the debtor's expectancy of life according to the Carlisle Tables; but if such amount be exceeded, the policy may be a wagering transaction.

2. The fact that in assessment insurance the cost of the policy cannot be calculated beforehand with precision, does not render it an exception to the limitations of the above rule. Even in such insurance, a reasonable approximation is possible; and, as the law does not exact impossibilities, a slight mistake will not necessarily vitiate a policy taken out in good faith.

3. A policy for $3,000 to cover a debt of $100 may be declared a wager, as matter of law, when the apparent disproportion between the two sums is unexplained: Cooper v. Shaeffer, 20 W. N. 123; but evidence of the debtor's expectancy of life, and the cost of maintaining the policy during that period, is admissible to show that the seeming disproportion was not an actual one.

4. In an action by the executor of the insured for money collected on such a policy by the payee, the testimony for defendant tending to show that if the insured had lived out his expectancy, the assessments and interest thereon would have exceeded the amount of the policy, and that the

Statement of Facts.

transaction was bona fide, the case was properly submitted to the jury: Gilbert v. Moose, 104 Pa. 74, and cases following it, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 201 January Term 1890, Sup. Ct.; court below, number and term not shown.

On February 11, 1889, A. Stanley Ulrich, executor of the will of Andrew Bleistine, deceased, brought assumpsit against Adolphus Reinoehl and Charles H. Meily, trading as Reinoehl & Meily, to recover certain moneys collected by the defendants as assignees of a policy of insurance upon the life of the plaintiff's testator, on the allegation that said policy, as to the defendants, was a wagering contract. The defendants' plea was non-assumpsit.

At the trial, on October 24, 1889, the following facts were shown:

In 1877, the defendants held a judgment against Andrew Bleistine for $99.51, which was the second lien upon his real estate. Other creditors were pushing him, and he desired to get rid of the defendants' judgment, in order that he might make some arrangement to meet his other indebtedness. To this end, he offered to give the defendants a policy of insurance on his life in $3,000, $5,000 or $10,000, if they would satisfy the judgment. They at first declined to make such an arrangement, but after several interviews yielded to the entreaties of Bleistine and his wife, and consented to take a policy for $3,000 and in consideration thereof satisfy the judgment. Accordingly, on April 2, 1877, they entered satisfaction on the record of the judgment, and on the same day Bleistine took out a policy for $3,000 in the United Brethren Mutual Aid Society, and immediately assigned it to the defendants. The assignment was not by way of collateral security, but was an absolute one, without reservation. The defendants paid the admission premium and all subsequent assessments and charges upon the policy. At the date of the policy the debt, interest and costs due upon the judgment in favor of the defendants amounted to $110.02. Bleistine died on August 13, 1881, and after his death the amount of the policy was paid by the insurer to the defendants. The latter were not related to the deceased.

Charge of Court below.

The defendants offered to show by Thomas Spangler, secretary of the defendant society, the life expectancy of the insured, Andrew Bleistine, at the time the insurance was taken out, and the amount of assessments which would have been paid upon the policy in question, in case the insured had lived out that life expectancy.

Objected to, as irrelevant and incompetent under the circumstances of this case.

By the court: Objection overruled; exception.[1]

The witness then testified, in substance, that Bleistine was insured at the age of 42 years; that according to the Carlisle Tables his expectancy of life was then 26.34 years; that, in the event of his living out that expectancy, there would be paid on that policy, on the basis of the present average number of assessments, "$2,226.32 of assessments, and on annuals $210," making a total of $2,436.13, without interest; and that if interest on the several payments were added, the total amount invested in the policy at the end of the expectancy of life of the insured would be $4,336.31.

The testimony being closed, the court, McPHERSON, J., charged the jury in part as follows:

[The question, and the only question in the case for you to determine, is whether or not this was a wagering or speculative contract.] [7] . . . .

Now, you will have to determine, and therefore as I say, we submit to you the question, whether or not this was a speculative transaction. And you must, of course, determine it, not by what took place since that time, but by what took place at the time the contract was made, and this policy was taken out by the parties and assigned to Reinoehl & Meily. It is admitted that they were not relatives, and therefore had no insurable interest on that account; but it is contended, and it appears clearly, that they were creditors to the amount which I named; and therefore they had an insurable interest to some extent in this man Bleistine, who was their debtor in the sum of nearly one hundred dollars; and therefore, we repeat, they had a right to insure his life, so as to protect that debt. The difficulty arises there just at that point: for how much ought a creditor to insure the life of his debtor, in order to fairly protect his

Charge of Court below.

debt? Of course, there are other things to be considered than the mere amount of the debt. You must consider the age of the person insured; his condition of health, his habits of life, and there are other circumstances also to be considered. The character of the company in which the insurance is to be put, is a fair matter of consideration; the amount insured, as bearing upon the amount of premiums, or the amount of assessments which the insurer may be called upon to pay; and you see, therefore, that it is not an easy matter to determine off-hand just how much insurance a creditor ought to take out in order to protect a debt. If he takes out too little, he may be called upon to pay out a considerable amount of money, and at the death of his debtor may find that, instead of being paid his debt, he is out of pocket a considerable sum; and that would inevitably be the case if he takes out too small a policy. On the other hand, if he takes out too large a policy, one that is entirely disproportionate, then it plainly becomes a wagering or speculative policy. It is then plainly his interest that the man should die, and die soon.

Take this present case: Suppose, instead of a policy of three thousand dollars, it had been ten thousand dollars. I suppose none of us would hesitate a moment to say that, considering all the circumstances and all the evidence in the case, this was a grossly disproportionate sum, and therefore the policy should be pronounced a wagering policy as a matter of law. [But I am not able to say to you, considering all the facts before us, that this is a wagering policy. I think it is a question of fact for yourselves.] [8] . . . .

Now, what is the case? Here is the admitted relation of debtor and creditor, and the creditor is about to take out a policy of insurance upon the debtor to protect his debt; and he takes it out in a certain sum. [Now, the question for the jury is whether, considering all the circumstances of that transaction ―the age of the person insured, his condition of health, his habits of life, his expectancy of life, the amount of premium, the probable amount required to be paid by the creditor―whether, considering all those matters, the amount of insurance taken out to protect that debt was so disproportionate as to make the policy a wagering or a speculative policy. If the jury find that it was not, that it was properly proportionate, fairly calculated

Charge of Court below.

to protect the debt, and no more, then the verdict must be in favor of the defendants.] [9]   If, however, they find under all the circumstances of the case—and we consider it as of that time, and not as of this—that it was a wagering policy, then the plaintiff is entitled to recover the sum which I have already indicated to you, and of which you will no doubt have a calculation.

[The fact that this transaction has turned out well for the defendants is not the controversy ; for, if this man had lived out his expectancy of life, if the calculations which you have heard testified to were accurate, it would have turned out badly ; and the mere fact that it turned out well is not controlling.   In my judgment, it is not an element in the case at all.   The question is, whether, when the policy was made, it was a wagering contract, or was to fairly protect the debt, and no further.] [10]   If it was the latter kind of contract, the defendants are entitled to the proceeds of the policy.   If it was the former, then they are entitled only to that which I have said, and the jury must find for the plaintiff in the amount I have indicated.

[Plaintiff's counsel have asked us to answer a number of points.   They are all refused, because they all ask for binding instructions as to the amount to which the defendants are entitled.   I need not read them to you.] [6]   The defendants' points I have already answered in the general charge, so that I need not detail them.

—Among the points of the plaintiff referred to in the charge, were the following :

4. If the jury believe that Reinoehl & Meily effected this insurance for themselves ; that they paid all the premiums and assessments ; that the policy was taken out with the understanding that it was for the benefit of defendants and to be assigned to them, and they having shown no insurable interest in the life of the insured except judgment No. 116 January Term 1876, the verdict must be for the plaintiff, for whatever is in excess of said judgment, and whatever expense they may have had to keep policy in force, with interest. [4]

5. The satisfaction of the judgment No. 116 January Term 1876, held by Reinoehl & Meily against Andrew Bleistine, for $99.51, with interest and costs, on April 2, 1877, the date of the assignment to them of the $3,000 policy by Bleistine, as the consideration for the assignment of this policy on Bleistine's

Charge of Court below.

life, was a purchase of the policy from Bleistine by Reinoehl & Meily. The satisfaction of the judgment, as the price of the transfer to them of the policy, was an extinguishment of the indebtedness from Bleistine to Reinoehl & Meily, and with it the interest Reinoehl & Meily, as creditors, theretofore had in the prolongation of the life of Bleistine. Both the purchase of a policy, and the taking of a policy on the life of another by a person no longer a creditor, and whose pecuniary interest lies in an early death of the insured, are speculative transactions, against the policy of the law; and as such, Reinoehl & Meily acquired no right to any portion of the proceeds, except sufficient to reimburse them for their satisfied judgment, with interest and costs, and the necessary outlay in the taking out and maintenance of the policy, with interest on the payments to the date of the payment of the money; and the jury must find in favor of the plaintiff for the balance.[5]

6. The amount allowed and paid as the consideration of the transfer of the insurance, to wit, the sum of $99.51, with interest thereon from December 7, 1875, April 2, 1877, and the costs, was grossly inadequate; and the disproportion between that amount and the amount of the insurance, $3,000, is so great as to require the court to say, as matter of law, that the transaction was a wager, and that in this action Reinoehl & Meily have no right to retain more of the insurance money received by them than the amount of their satisfied judgment with interest and costs, and the premiums and assessments paid by them, with interest thereon; and therefore, the verdict of the jury must be in favor of the plaintiff for the amount received by the defendants, with interest from the date of its receipt, less the amount of the judgment, interest and costs, and assessments and premiums paid, with interest.[2]

7. The utmost insurance upon the life of Bleistine to which the defendants would have been entitled, was for the amount of the principal, interest and costs of their judgment of $99.51, with interest thereon for the period of his life expectancy, added to the amount of the premiums necessary to insure such aggregate for his expectation of life under the Carlisle Tables, with interest on the amount of such premiums at lawful rates for the one half of such period, instead of the disproportionate amount taken by them. Having insured for an amount largely

in excess of the sum to which they were entitled, they are now entitled to be allowed only an amount sufficient to pay them their debt, with interest and costs, and the interest thereon to the date of the payment to them of the insurance, together with the actual premiums, etc., by them paid, with interest thereon to the receipt of the money sued for; and for the remainder of the fund with interest, the verdict of the jury must be for the plaintiff.[3]

—The jury returned a verdict for the defendants.

A rule for a new trial having been argued, the court, Mc-PHERSON, J., on December 26, 1889, filed an opinion as follows:

The defendants, being creditors of the decedent, had an undoubted insurable interest in his life: Corson's App., 113 Pa. 444; and in this respect the case before us essentially differs from Seigrist v. Schmoltz, 113 Pa. 326, where the beneficiary had no such interest, and was therefore denied the right to retain any sum beyond actual payments with interest thereon. The present question, however, is this: The defendants' insurable interest being admitted, should the court have declared the policy speculative, as a matter of law, because it was disproportionately large, or was its speculative character to be determined by the jury? If the question was for the jury, the plaintiff's points were properly refused, because they all asked for binding instructions.

As stated in the charge, there is on the surface much resemblance between this case and Cooper v. Shaeffer, 20 W. N. 123; but we thought then, and still think, that there is much real difference also. That case was rested in the court below, and on this point we can speak with positiveness, solely on the disproportion between the debt and the amount of the policy. Even the age of the insured was not dwelt upon as an element of the problem, and there was not a word of evidence as to the expectancy of life, or the probable amount of annual payments to be made. Here, however, these important matters were proved, were urged as a principal ground of defence, and required consideration. In our opinion, they necessarily carried the case to the jury, and abundantly justified the verdict. The defendants insured a healthy man of forty-two years in the sum of three thousand dollars, to protect a debt of one hundred

dollars. If he had merely lived out his expectancy and no longer, they would have been obliged to pay for assessments and annual dues $2,436.32, to which, if interest be added, the amount of their investment would have been $4,336.31. In return, they would have received three thousand dollars, thus suffering a considerable loss. Surely, to call such a transaction speculative is to misuse the word. That it happened to be profitable because the insured died within a few years, is manifestly not to the point.

With much respect, it is suggested that the principle, indicated in Grant v. Kline, 115 Pa. 625, and Cooper v. Shaeffer, supra, as the proper rule to determine for what sum a creditor's policy should be taken out, ought to be somewhat expanded before it is positively adopted. As now stated, it would not provide for a case like this, where the policy is taken out in a company which levies annual (monthly?) assessments, and where, therefore, allowance must be made in the creditor's forecast for possible fluctuations; neither would it now provide for the not infrequent contingency of the insured outliving his expectancy. Under the present form of the indicated rule, the creditor must always lose if the debtor lives beyond his expectancy; and it cannot be accurately applied to assessment insurance, because in this variety of the business the annual payments are not a previously known and certain sum.

New trial refused and judgment directed on the verdict upon payment of the jury fee.

—Judgment having been entered, the plaintiff took this appeal, assigning for error:

1. The admission of defendants' offer.[1]

2–5. The refusal of plaintiff's points.[2 to 5]

6–10. The parts of the charge embraced in [ ] [6 to 10]

The cause was first argued in the Supreme Court on February 20, 1890, before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

*Mr. Grant Weidman* (with him *Mr. A. Stanley Ulrich*), for the appellant:

1. When the defendants made the offer set out in the first assignment of error, the evidence already before the court ex-

hibited every element of speculation in life insurance, to wit, want of relationship: Gilbert v. Moose, 104 Pa. 74; disproportion between the amount of the policy and the debt due the defendants: Cooper v. Shaeffer, 20 W. N. 123; the payment of all premiums and dues by the defendants by whom the policy was taken and held: Scott v. Dickson, 108 Pa. 16; Downey v. Hoffer, 110 Pa. 115; and the fact that the transaction was a purchase of the policy by the defendants: Downey v. Hoffer, supra; Bliss on Life Insurance, 2d ed., 41. With these facts before the court, there was error in receiving proof that if Bleistine had lived out his expectancy, the speculation would have resulted disastrously. A disproportion so gross as 30 to 1 is not capable of excuse or justification: Cooper v. Shaeffer, 20 W. N. 123; Cammack v. Lewis, 15 Wall. 643; Gilbert v. Moose, 104 Pa. 74; Corson's App., 113 Pa. 438.

2. The extent to which a creditor is allowed to insure the life of his debtor is the amount of the debt with interest, and the amount of the premiums with interest thereon during the expectancy of life according to the Carlisle Tables: Grant v. Kline, 115 Pa. 618; Cooper v. Shaeffer, 20 W. N. 123; Dalby v. Insurance Co., 15 C. B. 365; Connecticut Ins. Co. v. Shaeffer, 94 U. S. 457; Scott v. Dickson, 108 Pa. 14. In the present instance, the debt, with interest thereon for twenty-six years, would amount to less than $300, or one tenth the amount of the policy. The one tenth part of the sum, named by the witness Spangler as the total of premiums and interest for twenty-six years upon a policy for $3,000, would be $433.65. Adding this sum to the $300, we have a total of less than $800. A policy in that sum would therefore be sufficient to protect this debt, and as to the surplus of this policy, over and above that, the transaction was purely a gambling venture. The disproportion being so excessive and so clear, it was error to submit the character of the transaction to the judgment of the jury: Moore v. Small, 19 Pa. 468; De France v. De France, 34 Pa. 390.

*Mr. W. M. Derr* ( with him *Mr. F. E. Meily* ), for the appellees:

The present case is distinguished from those in which the question of disparity between the sum insured and the debt

Opinion of the Court.

has been passed on by the court, as the testimony presented, showing the considerations entering into the making of the contract, raised a question to be decided by the jury, while, in the cases of the other kind cited by appellant, the disparity was the only fact before the court. Calculations upon the data furnished by the testimony, will show that the assessments upon a policy for $800 would in twenty-six years amount to $1,156.34, that such a policy would result in a loss to the defendants, if the insured were to live out only fourteen years of his expectancy; and that, in the circumstances of the case, a policy for less than $3,000 would not afford adequate protection for the debt. The courts should be cautious about interfering lightly with the freedom of contract upon the ground of public policy : Printing Co. v. Sampson, L. R, 19 Eq. 462.

—A re-argument having been ordered, the case was again heard on February 16, 1891, before a full Bench.

*Mr. Grant Weidman* ( with him *Mr. A. Stanley Ulrich* ), for the appellant.

Counsel cited, in addition to cases cited upon the former argument: Pritchet v. Insurance Co., 3 Y. 458 ; Phillips v. Ives, 1 R. 36 ; Fareira v. Gabell, 89 Pa. 91 ; Printing Co. v. Sampson, L. R. 19 Eq. 462 ; distinguishing Shaak v. Meily, 136 Pa. 161.

*Mr. W. M. Derr*, for the appellees.

Counsel cited, as to the submission of the case to the jury : Fareira v. Gabell, 89 Pa. 89 ; Kirkpatrick v. Bonsall, 72 Pa. 159 ; Shaak v. Meily, 136 Pa. 161 ; distinguishing Cooper v. Shaeffer, 20 W. N. 123 ; Cammack v. Lewis, 15 Wall. 643.

OPINION, MR. CHIEF JUSTICE PAXSON :

This case is not free from difficulty. It has been twice argued, and has received a most careful consideration. It presents the question, to what extent a creditor may lawfully insure the life of his debtor. We have avoided ruling this point before, because it was one of grave importance, and the cases in which it was raised did not necessarily require it, nor did they present all the facts necessary to enable us to dispose of it satisfactorily. This record raises the whole question squarely. The facts are substantially as follows :

The defendants are doing a firm business at Lebanon, Pa., and held a judgment against one Andrew Bleistine in the Court of Common Pleas of Lebanon county, which, with interest and costs, amounted to $110.02. The judgment was sufficiently secured on real estate, and the defendants were not pressing their debtor for the money. He was being pressed by other creditors who held subsequent liens on his property. It was necessary to quiet them for Bleistine to pay off the judgment held by the defendants, or get rid of it in some manner. Not having the money, he applied to the defendants to satisfy it and take a policy on his life instead. The evidence is uncontradicted that the defendants were averse to this, and for a time declined, but finally yielded to Bleistine's entreaties and his wife's tears, to save their home. The evidence shows that Bleistine offered them an insurance of three thousand dollars, or five thousand, or ten thousand, or any amount they wanted.  The negotiation resulted in the defendants taking a policy of three thousand dollars on the life of Bleistine in the U. B. Mutual Aid Society. The policy was issued in the name of Bleistine as beneficiary, and afterwards assigned by him to the defendants, who paid the entrance fee and all subsequent assessments. The assignment was absolute and not as collateral security, and the judgment referred to was satisfied of record. After Bleistine's death, the insurance money was paid by the company to the defendants. Subsequently, this suit was brought by the executor of Bleistine to recover from them the amount received over the debt and interest, and premiums paid; the plaintiff alleging that the amount of insurance was so disproportioned to the debt as to make it a gambling transaction, within the doctrine of Gilbert v. Moose, 104 Pa. 74, and the cases following it.

We may safely assume that the debt due by Bleistine to the defendants was bona fide; that, so far from the latter having procured the former to insure his life for their benefit for a speculative purpose, they entered into it with reluctance at the earnest request of Bleistine and his wife, to relieve them from financial embarrassment and to save their home. This takes out of the case the controlling element which existed in Gilbert v. Moose, and that line of cases. Yet, if the defendants, even for an honest purpose, have transgressed the law and made

this a gambling transaction, they must suffer the penalty for such violation.

The first and second assignments present the main question in the case. Upon the trial below, the defendants proved, under exception, the life expectancy of Bleistine, and the amount of assessments on this policy had he lived out his full life expectancy. It appears from this evidence that the insured was forty-two years of age, and that his expectation of life, according to the Carlisle Tables, was twenty-six years; that, had he lived that length of time, the interest on the judgment, with the annual dues and assessments and interest thereon, would have amounted to $4,336.31, being $1,336.31 in excess of the amount of the policy. This evidence was not contradicted. Its admission forms the subject of the first assignment.

In the second assignment, complaint is made that the learned judge erred in his answer to the plaintiff's sixth point. The point is as follows:

"The amount allowed and paid as the consideration of the transfer of the insurance, to wit, the sum of $99.51, with interest thereon from December 7, 1875, to April 2, 1877, and the costs, was grossly inadequate; and the disproportion between that amount and the amount of the insurance, three thousand dollars, is so great as to require the court to say, as matter of law, that the transaction was a wager, and that in this action Reinoehl & Meily have no right to retain more of the insurance money received by them than the amount of their satisfied judgment, with interest and costs, and the premiums and assessments paid by them with interest thereon; and therefore, the verdict of the jury must be in favor of the plaintiff for the amount received by the defendants, with interest from the date of its receipt, less the amount of the judgment, interest and costs, and assessments and premiums paid, with interest."

This point was refused.

Whether the question of excess of insurance is to be disposed of by the court as a matter of law, or by the jury as a question of fact, it is essential that we should have a fixed rule. We have none now. I felt the importance of this, in delivering the opinion of the court in Grant v. Kline, 115 Pa. 618, where I said: "Speaking for myself it may be that a policy

Opinion of the Court.

taken out by a creditor on the life of his debtor ought to be limited to the amount of the debt, with interest, and the amount of premiums, with interest thereon, during the expectancy of life, as shown by the Carlisle Tables. This view, however, has never been adopted by this court in any adjudicated case, nor do we feel compelled to define the disproportion now, in view of the particular facts of the case in hand." In the subsequent case of Cooper v. Shaeffer, 20 W. N. 123, our Brother STERRETT, after quoting the above, remarked, "This appears to be a just and practicable rule." No such rule was established, however, in Cooper v. Shaeffer. In that case, there was an insurance of three thousand dollars, to cover a debt of one hundred dollars, and this court said, through Mr. Justice STERRETT: "In view of the undisputed facts, the learned judge of the Common Pleas held that the disproportion between the insurance of three thousand dollars and the debt of one hundred dollars, was so great as to require him to say, as matter of law, that the transaction was a wager, and that the assignors of the policy had no right to retain more of the insurance money recovered by them than the amount of the debt, plus the premiums paid and interest thereon. In this he was clearly right. The disproportion is so great as to make the insurance a palpable wager, and no court should hesitate to declare it so as matter of law."

We have no doubt that in a proper case, where the facts are not disputed, it is the duty of the court to pronounce upon the character of the policy. Thus, in Grant v. Kline, supra, it was said, " To take out a policy of five thousand dollars to secure a debt of five dollars, would be such a palpable wager that no court would hesitate to declare it so as matter of law." It is true, this remark was made by way of illustration, and we only refer to it for that purpose now. Cooper v. Shaeffer decided nothing but that particular litigation. It laid down no rule for the future beyond its own particular facts, viz., that an insurance of three thousand dollars for a debt of one hundred dollars, unexplained, was a gambling policy. It may be asked why it does not rule this case, where the amount of insurance was the same, and a difference of a few dollars only in the amount of the debt? The answer is not difficult. Cooper v. Shaeffer was decided upon the single ground of the

disproportion between the insurance and the debt. There were
no facts in evidence by which this disproportion could be ex-
plained or shown to be justifiable. This appears by the report
of the case, as well as from the opinion of Judge McPherson,
who tried that, as well as this case below. In refusing a new
trial in the case in hand, that learned and able judge said, in
reference to Cooper v. Shaeffer: "Even the age of the insured
was not dwelt upon as an element of the problem, and there
was not a word of evidence as to the expectancy of life, or the
probable amount of annual payments to be made. Here, how-
ever, these important matters were proved, urged as a principal
ground of defence, and required consideration. In our opin-
ion, they necessarily carried the case to the jury, and abun-
dantly justified the verdict. The defendants insured a healthy
man of forty-two years, in the sum of three thousand dollars
to protect a debt of one hundred dollars. If he had merely
lived out his expectancy, and no longer, they would have been
obliged to pay for assessments and annual dues $2,436.32, to
which, if interest be added, the amount of their investment
would have been $4,336.31. In return they would have re-
ceived three thousand dollars, thus suffering a considerable
loss. Surely, to call such a transaction speculative, is to mis-
use the word. That it happened to be profitable, because the
insured died within a few years, is manifestly not to the point."
I have quoted this extract at length, because I could in no
better way emphasize the distinction between Cooper v. Shaeffer
and the case in hand.

The law very properly lays a mailed hand upon speculative
life insurance; of all the forms of gambling it is one of the
most objectionable. The records of our own court show that
it sometimes leads to murder. The holder of a policy upon a
life in which he has no interest, either of a social or pecuniary
nature, has a strong interest in the death of the assured. This
interest grows and strengthens with each payment of premium.
He has made a bid upon the life of another person. A man
who will engage in such a transaction cannot safely be regarded
as a saint. He sees with growing impatience that life pro-
longed from year to year, and his money slipping away in pre-
miums. A man thus situated soon becomes familiar with the
thought of the death of the person who stands between him

Opinion of the Court.

and what, in his morbid fancy, he may regard as his rights. That crime follows, in some instances, is a fact of which we have judicial knowledge.

All life insurance is in one sense speculative. Yet within proper restrictions it has been found to be highly beneficent, and not in conflict with public policy. It enables a man, in the days of his early struggles, to provide for his family in case of his death. It renders it possible for a business man to borrow the capital needed for success. It furnishes the means, and the only means, by which a creditor may sometimes secure a doubtful claim. Yet, in all these cases, there is the element of speculation, for if the assured dies shortly after the policy is issued, the beneficiary, whether he be a blood relation or a creditor, gets a sum of money greatly disproportioned to the amount paid. But in these cases the law does not regard the speculative element as one of danger. It is true that a son who takes out a policy on the life of his father, or a creditor upon the life of his debtor, may have an interest in the death of the assured and resort to crime to procure it, but experience shows that such instances are extremely rare, and the temptation no greater than in thousands of other instances in which one person may be benefited pecuniarily by the death of another. But a policy taken out by one who has no interest, either as a creditor or a relative, in the life of the assured, is always a danger signal.

It is settled law that a creditor has an insurable interest in the life of his debtor, but up to this time there is no decision as to the limit of this right. Our own cases furnish us no settled rule, and for this reason I do not think it necessary to review them. Each case has been decided upon its own facts. In Cooper v. Shaeffer, as before observed, it was said the insurance was too large; in Grant v. Kline, on the other hand, we held that the amount of insurance was not disproportioned to the debt. We have now reached a point where it is necessary to lay down some fixed rule by which such cases can be disposed of in the future, otherwise the rulings of the courts and the verdicts of juries upon such questions will be arbitrary, and where there is nothing in a case but the amount of the insurance and the amount of the debt, it is impossible for either a court or a jury to arrive at a correct result.

Opinion of the Court.

Starting out with the conceded proposition that a creditor has an insurable interest in the life of his debtor, and may lawfully take out a policy thereon, it follows logically that he may take out the policy in such a sum as may reasonably secure the debt. It needs no argument to show that if my debtor owes me one thousand dollars, a policy for one thousand dollars would be inadequate, for if my debtor dies within twenty-four hours after the policy is taken out, I am a loser by the amount of the premium paid, and it would be but a few years before the interest on the debt and the premiums would exceed the debt. Every future payment then would be a loss, with the only alternative of adding to this loss year by year, or abandoning the policy altogether, and sinking the whole amount paid. It seems clear upon reason that the creditor may take out a policy in excess of his debt. But to what excess ? The answer to this question obviously depends upon circumstances. An important element in the consideration of this question is the age of the assured. The difference between a policy on the life of a man of twenty-five years of age and one of seventy-five, is clear to the dullest understanding. The assured was only forty-two years of age, and his expectancy of life was twenty-six years. The chances were greatly in favor of his living out his expectancy. The Carlisle Tables were prepared with care by competent experts, and are the result of actual experience. I am therefore justified in saying that the chances were in favor of the assured living out his expectancy, in which case there would be the loss of interest on the debt for twenty-six years, added to the dues and assessments with interest thereon for the same period. The evidence shows that, in such event, the defendants would have been losers by a considerable sum. In fact, I infer from the tables furnished that after about seventeen years the defendants would have carried this policy at a loss. The defendants assumed this risk when they took out the policy. They also had the chance of the assured not living out his expectancy. This is a risk which an insurance company assumes upon every policy which it issues. In a particular instance, the assured may live many years beyond his expectancy, which is a large gain to the company. But this gain is equalized by the loss in instances where the assured dies before the expiration of his expectancy, so that in the vast

Opinion of the Court.

volume of business of such corporations the average result is reasonably uniform. But the holder of a single policy can have no average result. He takes the risks with the chances fairly balanced. Had these defendants taken out one hundred policies on the lives of as many debtors, it is more than probable that some of them would have largely exceeded their expectation, while others would not have reached it. In such case, there would not have been material gain or loss.

Had the assured lived out his expectancy of life, no question would probably have arisen as to the right of the defendants to retain the whole of the money. It could not then have been successfully assailed as a gambling transaction. I submit that the character of the contract cannot depend upon results, or the accident of death. If not lawful in its inception it could never become so.

In order to ascertain whether an insurance is disproportioned to the debt, regard must be had to the age of the assured, his expectation of life, and the cost of carrying the insurance, with interest thereon, as well as upon the amount of the debt. The evidence which forms the subject of the first assignment was not only proper, but essential to an intelligent understanding of the case. It is just what was lacking in Grant v. Kline, and was one of the reasons why we avoided deciding the broad question in that case. But any one who reads that opinion between the lines, can see that the judicial mind must have been influenced, to some extent, by the suggestion in reference to the Carlisle Tables.

The rule we now announce may not be the best, but we have not been able to find a better, after a most careful and anxious consideration of the question. That it will not produce exact justice in all cases is possible. There will always be cases of individual hardship in the application of all general rules. No general rule can be made to fit each particular case, otherwise it would cease to be a rule. My attention was especially called to this difficulty by the following extract from the opinion of the learned judge below in refusing a new trial:

"With much respect it is suggested that the principle indicated in Grant v. Kline, 115 Pa. 625, and Cooper v. Shaeffer, supra, as the proper rule to determine for what sum a creditor's

Opinion of the Court.

policy should be taken out, ought to be somewhat expanded before it is positively adopted. As now stated, it would not provide for a case like this, where the policy is taken out in a company which levies annual (monthly?) assessments, and where, therefore, allowance must be made in the creditor's forecast for possible fluctuations; neither would it now provide for the not infrequent contingency of the insured outliving his expectancy. Under the present form of the indicated rule the creditor must always lose if the debtor lives beyond his expectancy; and it cannot be accurately applied to assessment insurance, because in this variety of the business the annual payments are not a previously known and certain sum."

We have no difficulty in disposing of the objection that the rule does not provide for the case of the assured living beyond his expectancy and thus entailing a loss upon the creditor. If we go beyond the expectancy where are we to stop? A man may live to the age of a hundred, and such length of days is of frequent occurrence. To sanction a policy covering such a period, and yet to allow the holder to recover the full amount in case of death within a year, would be a retrograde step in our decisions. Under such a system the creditor would be absolutely secure, with the possibility of an enormous gain in case of an early death; whereas, at present, as I have endeavored to show, the risk of a debtor exceeding his expectancy is equalized by the possibility of his death within it, and in a given number of cases the result produces uniformity. The want of uniformity is not the fault of the rule, but of its application to a single case.

There is more difficulty in the other objection. The policy in question, however, was taken out in a mutual company, where assessments are made from time to time, and there appears to have been no difficulty upon the trial below in ascertaining with sufficient accuracy the amount of assessments which the defendants would have been called upon to pay had the assured lived out his expectancy. The precise amount of such assessments cannot, of course, be estimated with the same accuracy as in the case of a company in which the annual premium is a fixed sum. But the assessments, even in a mutual company, can be approximated by the experience of other similar companies with sufficient accuracy to base an insurance

upon it. And where a policy has been taken out in good faith by a creditor, the law does not exact impossibilities. A slight mistake, one way or the other, owing to the condition of the company's business by which assessments are increased or diminished, would not necessarily vitiate a policy. The cost of life insurance, by whatever system adopted, it is believed does not vary so greatly as to prevent a reasonable approximation thereof.

It may be that few men would take out a life policy to secure a debt of one hundred dollars, where there is an expectancy of life for twenty-six years, and pay an annual assessment or premium in excess of the whole amount of the debt. But we do not pass upon the wisdom of contracts; we only consider their legality. And care must be taken in the enforcement of an admittedly sound rule of public policy, not to impinge upon the right of the citizen to contract. In this instance, the contract was lawful, and the defendants appear to have entered into it not so much for their own benefit as for the accommodation of the assured. We are not to measure its legality by its results, but by its surroundings at the time it was made.

We are of opinion that a creditor may lawfully take out a policy on the life of his debtor in an amount sufficient to cover the debt with interest, and the cost of such insurance with interest thereon, during the period of the expectancy of life of the assured according to the Carlisle Tables. We find no error in the ruling of the court below.

Judgment affirmed.