Harrison Wheeland v. Clarence Atwood, with notice to the Mutual Life Insurance Company of New York and Daniel A. Fessler, as Garnishees, Appellant.

*Insurance—Life insurance—Insurable interest—Debtor and creditor— Husband and wife.*

A wife who owns a policy of insurance on her own life may assign it to her husband, and he in turn may assign it to a creditor of his own in payment of a valid debt.

A creditor may lawfully take out a policy on the life of his debtor in an amount sufficient to cover the debt, with interest, and the cost of such insurance, with interest thereon during the period of the expectancy of life of the assured according to the Carlisle tables.

A policy of insurance on the life of a wife was assigned by the wife to her husband and he in turn assigned it to a creditor in payment of a debt of $1,900. The policy was for $5,000, and the wife's expectancy of life was about twenty-six years. The amount of premiums that the creditor would have been obliged to pay if she had lived out her expectancy would have been about $4,500. The wife died a few months after the creditor acquired title to the policy. *Held,* that the creditor was entitled to the whole amount of the policy.

Argued March 13, 1899. Appeal, No. 32, Feb. T., 1898, by defendant, from decree of Superior Court, Jan. T., 1898, No. 186, reversing judgment of C. P. Lycoming Co., March T., 1897, No. 470, for defendant. Before Sterrett, C. J., Green, Mitchell, Dean and Fell, JJ. Reversed.

Appeal from Superior Court.

The facts are stated in 7 Pa. Superior Ct. 86, as follows:

It appears from the evidence that the Mutual Life Insurance Company of New York insured the life of Charity D. Atwood in the sum of $5,000 by a policy payable to her executors, administrators or assigns. On May 19, 1894, Mrs. Atwood assigned this policy to her husband, Clarence Atwood. On August 1, 1896, Clarence Atwood, the husband, assigned the policy out and out to Daniel Fessler, who was his creditor to the extent of $1,900. Fessler paid two premiums to the insurance company. Mrs. Atwood died on January 29, 1897, and on February 8, 1897, the company paid Fessler the net amount of the policy, $4,946. On January 22, 1896, Wheeland, and

others, obtained judgment against Clarence Atwood aggregating about $600.    These creditors issued attachment executions on their several judgments against the insurance company and Fessler as garnishee.    The three cases were tried together.

There appeared from the statement of the account that after allowing for the repayment of Fessler's debt against Clarence Atwood, interest thereon, premiums paid and interest on the premiums, there was a balance in Fessler's hands amounting to $2,762.65.

The trial court directed a verdict for the plaintiff, reserving the question whether upon the whole evidence he was entitled to recover, and subsequently entered judgments for defendants non obstante veredicto.    On appeal the Superior Court reversed the judgment.

*Error assigned* was the judgment of the Superior Court.

*John J. Reardon,* with him *Henry C. Parsons,* for appellant.

*C. La Rue Munson,* with him *Otto G. Kaupp* and *Addison Candor,* for appellee.

OPINION BY MR. JUSTICE GREEN, July 19, 1899:

Under the assignment of the policy in question by Mrs. Atwood to her husband, Clarence Atwood, he became the absolute owner of the policy.    In 1896 he was indebted to Daniel A. Fessler in the sum of about $1,900.    Being unable to continue the payment of the premiums, according to the testimony, and desiring to pay all the debt he owed to Fessler, he made an absolute assignment of the policy to Fessler, who paid the subsequent premiums accruing on the policy.    There was nothing whatever in the testimony impugning the integrity of the transaction, or showing or tending to show that it was a speculative transaction upon the life of Mrs. Atwood; on the contrary, it was the undisputed evidence that it was an assignment of the policy made for the purpose of paying the debt as far as it could, which the assignor owed to the assignee, and the policy itself in its original inception was a good faith policy made for a legitimate, and not a speculative, purpose, and for that reason was assignable to anybody for a proper and law-

ful consideration. The interest of the husband in the life of his wife validated the policy, and her assignment of it to him gave him a good absolute title to it which he might dispose of for a lawful consideration, especially when he was no longer able to pay the premiums and could pay an honest debt with it. It was shown by the testimony of the agent of the life insurance company that Mrs. Atwood's expectancy of life at the time the policy was issued was twenty-five ninety-nine one hundredths years, and that the amount of premiums that Fessler would have been obliged to pay if she had lived out her expectancy would have been about $4,500. As the policy was for $5,000, Fessler would have been a considerable loser in money if Mrs. Atwood had lived the full period of her expectancy. These facts bring the case within the ordinary class of cases of insurances by creditors upon the lives of their debtors, which are constantly sustained by the courts.

In Grant's Admr. v. Kline, 115 Pa. 618, such a policy was sustained. A debtor owed his creditor $743, and a policy was issued to the creditor at the instance of the debtor upon the life of the debtor for $3,000. The debtor died within a year after the policy was issued and the insurance company paid the amount of the policy to the creditor as assignee of the policy. The administrators of the assured brought an action to recover all the money after the debt due the creditor and the premiums paid by him with interest had been deducted. It was contended there as here that the policy was a wagering policy and that the creditor had no insurable interest in the life of the debtor, but the court below, and this Court, held otherwise, and decided that it was not a wagering policy, that it was a perfectly valid transaction, and that the discrepancy between $743, the amount of the debt, and $3,000, the amount of the policy, was not so great as to invalidate it as a wagering policy. In Corson's Appeal, 113 Pa. 438, a policy was obtained by a creditor upon the life of his debtor, who was his aunt. The debt was about $500 and the policy was for $2,000. We held that the relationship was not close enough to sustain the policy on that ground, but that as creditor there was an insurable interest which was sufficient for that purpose. CLARK, J., delivering the opinion, said, "So also a creditor has an insurable interest in the life of his debtor," citing a number of cases. "In the case at bar

the policy was $2,000, the amount of the indebtedness was at that time undetermined, and therefore uncertain; it is since ascertained to have been between $500 and $750. Considering the character of their business relations, the unsettled condition of their affairs, the age of the subject of insurance, the probable amount of premiums which might accrue, the accumulation from interest, we could not say the transaction carries with it any inherent evidence of bad faith. The essential thing is, as stated by the learned judge of the court below, that the policy should be obtained in good faith, and not for purposes of speculation upon the hazard of a life, in which the insured has no interest. The case is materially different from Gilbert v. Moose, 104 Pa. 74; the principles involved in that case are not drawn in question here."

But a still more emphatic illustration of this doctrine occurred in the case of Ulrich v. Reinoehl, 143 Pa. 238. There the debt was $99.51 and the policy was for $3,000. The policy was taken out by the debtor in his own name and was immediately transferred absolutely to the creditor. The creditor paid all the premiums until the death of the debtor which occurred in 1881, about four years after the date of the policy. An action was brought by the executor of the will of the deceased debtor against the creditor who had received the whole of the insurance money, to recover the difference between the amount of the debt and premiums with interest and the amount of insurance. The court below submitted to the jury the question whether the transaction was speculative and wagering, or done with an honest intent to obtain payment of the debt. The jury found that it was done with an honest and not a speculative intent. The court charged that all the circumstances should be considered, the age of the insured, his condition of health, the probable amount required to be paid by the creditor, and then that the jury should inquire, "whether considering all those matters the amount of insurance taken out to protect that debt was so disproportionate as to make the policy a wagering or speculative policy. If the jury find that it was not, that it was properly proportionate, fairly calculated to protect the debt, and no more, then the verdict must be in favor of the defendants." It had been testified on the trial that if the insured had lived out his expectancy the total amount of assessments which the creditors

would have paid would be $2,436.13, which with interest added would have amounted to $4,336.31.  Upon appeal to this Court we sustained the ruling and, after an elaborate discussion of the whole subject, in which the matter was considered in all its aspects, and the necessity for adopting a fixed and uniform rule for all cases was stated, we said: "We are of opinion that a creditor may lawfully take out a policy on the life of his debtor in an amount sufficient to cover the debt with interest, and the cost of such insurance, with interest thereon during the period of the expectancy of life of the assured according to the Carlisle tables."

In the present case the assured was forty-three years of age at the date of the policy and had an expectancy of almost twenty-six years.  The amount of premiums to be paid with interest thereon would be at the end of the expectancy about $4,500, which being added to the debt, $1,900, and interest thereon, would result in a large loss to the creditor.  In the case of McHale v. McDonnell this rule was again asserted and followed.  The debt was $700 and the policy was $2,000.  Our Brother McCollum, delivering the opinion, said: "In this case there was no evidence showing what the assured's expectancy of life was when the policy was issued or when it was assigned. There was nothing therefore in the disproportion between the amount of the policy and the alleged consideration for the assignment of it which would have warranted the court or jury in denying to the plaintiff a recovery in accordance with his intention.  Grant's Admr. v. Kline was not overruled by Ulrich v. Reinoehl, 143 Pa. 238, or by Shaffer v. Spangler, 144 Pa. 223."

The foregoing decisions entirely dispose of the present contention.  Gilbert v. Moose and its following cases are not applicable.  They do not raise the same question.  The case of Wegman v. Smith, 16 W. N. C. 186, has no analogy to this. That was a mere speculative policy on the life of Mrs. Smith, and was immediately turned over to Smyser, who paid $5.00 for it.  There was no bona fides whatever in it.  It was a mere wagering policy which was made in the name of the husband to give it a seemingly lawful character, and it was transferred at once to one who had no interest in the life of either the husband or the wife.

For the reasons stated we are of opinion that the common pleas was correct in its judgment in this case, and the decision of the Superior Court was erroneous.

The judgment of the Superior Court is reversed and the judgment of the common pleas affirmed.