## NEW YORK LIFE INS. CO. v. NYDES et al.

### No. 2544.

District Court, W. D. Pennsylvania.

June 17, 1932.

Smith, Buchanan, Scott & Gordon, of Pittsburgh, Pa., for plaintiff.

M. H. Hirschfield, Leonard S. Levin, and M. Finkelhor, all of Pittsburgh, Pa., for defendants.

McVICAR, District Judge.

This is an interpleader proceeding under the Act of May 8, 1926, c. 273, §§ 1–3 (28 U. S. Code § 41, par. 26 [28 USCA § 41, par. 26]). The court finds the following facts and makes the following conclusions of law:

### Findings of Fact.

1. On August 18, 1925, the New York Life Insurance Company, upon the application of Israel Goodstein, issued a policy of life insurance to him, No. 10,132,663, upon the life of said Israel Goodstein, in the sum of $5,000, naming as beneficiary his wife, Dora Goodstein.

2. The quarterly premium under the policy was $59.05, making the total annual premium $236.20.

3. September 4, 1928, the insured changed the beneficiary from Dora Goodstein to "Insured's Executors, Administrators or Assigns."

4. September 7, 1928, Israel Goodstein, the insured, was indebted to Ben Nydes in the sum of $300 for which he had given a check to Nydes, which had been returned n. s. f. A criminal proceeding, being a misdemeanor charge, was entered against Goodstein by Nydes. Subsequently Goodstein paid Nydes $115. On the same date, September 7, 1928, Goodstein was indebted to Nydes in the sum of $1,500 for money advanced by Nydes to Goodstein. On the same date Goodstein and Nydes entered into a written contract under seal, prepared by Goodstein's attorney (Nydes being without counsel), wherein it was agreed that by virtue of the $1,500 indebtedness aforesaid, to be canceled of that date, and an additional $1,500 paid to Goodstein on the same date, that Goodstein would assign the aforesaid policy to Nydes and that he would change the beneficiary to read—"Insured's Executors, Administrators or Assigns." Also that upon payment of the balance due on the n. s. f. check of $185, that Nydes would return the check to Goodstein

and the criminal proceedings aforesaid would be nol prossed, and that Goodstein and Nydes each would release each other from all claim of damages by virtue of said criminal proceedings.

5. The provisions of the contract aforesaid were executed by both parties. The assignment of the policy to Nydes was signed by Goodstein, acknowledged by· him before a notary public and was delivered September 11, 1928. Goodstein at the time of the assignment was 51 years of age.

6. There is no evidence of fraud, duress, or of anything but the free and voluntary acts of the parties in the making and execution and carrying out of the contract aforesaid.

7. Israel Goodstein died June 14, 1931.

8. August 8, 1931, the New York Life Insurance Company, being the insurer in the policy aforesaid, filed the bill of interpleader in this case, naming as defendant and claimants of the ·insurance money, the assignee of the policy, Ben Nydes, and Dora Goodstein, the wife of the insured, she being the original beneficiary named in the policy.

9. October 13, 1931, the insurance money, $4,538.13, was paid into court. The balance of the policy, exclusive of costs, had been ·loaned to the insured.

10. December 17, 1931, a feigned issue was directed by this court wherein Nydes was · named as plaintiff, and Dora Goodstein as defendant. The parties were directed to file the proper pleading.

11. Nydes filed a pleading designated as his statement of claim, wherein he alleged that he was entitled to the insurance aforesaid by reason of the assignment and delivery of the policy to him. Defendant, Dora Goodstein, filed a pleading designated as her affidavit of defense, wherein she admitted the execution of the assignment of the policy aforesaid but alleged that it was procured by duress, and that the consideration was not valid.

12. On or about April 15, 1932, the parties, by their respective attorneys, appeared in open court and asked that a date be fixed for a hearing thereon as a suit in equity. Nydes desired the date to be fixed before,the beginning of the jury trials, which commenced on the first Monday of May, 1932. Dora Goodstein wanted the time fixed thereafter. To accommodate Dora Goodstein the date was fixed May 31, 1932.

13. On May 19, 1932, after it was too late to try the case on the May jury list, Dora Goodstein made application to have the issues in this case tried by a jury. By reason of the press of business the parties were informed·that the application would be passed upon and the case heard on the date originally fixed, May 31, 1932, which was done. ·

## Conclusions of Law. ·

1. The change of beneficiary from Dora Goodstein to "Insured's Executors, Administrators or Assigns" of September 4, 1928, the contract of September 7, 1928, between Goodstein and Nydes, and the assignment of the policy in suit, September 11, 1928, are valid.

2. Plaintiff is entitled to recovery of the insurance money paid into court by the New York Life Insurance Company.

3. Defendant Dora Goodstein should pay the costs. ·

## Opinion.

This is an interpleader proceeding. The defendant Nydes claims the insurance of the policy in suit, as assignee thereof. Dora Goodstein, wife of the insured, defendant, claims the insurance as the original beneficiary named in the policy.

■■ The assignment of the policy to Nydes, September 11, 1928, is admitted. Such assignments are valid unless they constitute a wager. Grant's Administrators v. Kline, 115 Pa. 618, 625, 9 A. 150; Wheeland v. Atwood, 192 Pa. 237, 43 A. 946, 73 Am. St. Rep. 803. The assignment in this case was not a wager.. The insured was 51 years of age at the time of the assignment, with an expectancy of life approximating 20 years. The consideration was $3,000. The amount of insurance less loan was $4,750, and the annual premium was $236.20.

Defendant contends that the assignment to Nydes was procured by duress; that the consideration therefor was invalid; and that she was entitled to have these issues decided by a jury. ·

■ There is no evidence of duress. The evidence is that the insured, at the time of the assignment, had a heart trouble; that he was going about as usual; that he had his attorney prepare the contract of September 7, 1928, providing for the assignment; that his adult son was present at the execution thereof; that the insured arranged for the assignment himself and took an active part in the

negotiations and other matters in relation to the contract and assignment aforesaid.

There is no evidence that the consideration on the assignment was illegal. The consideration was $3,000, $1,500 of which had been previously advanced to Goodstein by Nydes, and $1,500 paid to Goodstein at the time of the assignment.

In the contract providing for the assignment there was also an agreement concerning a $300 check, which Goodstein gave to Nydes for another debt, which had been returned n. s. f. $115 thereof was subsequently paid to Nydes by Goodstein. The contract provided for the payment by Goodstein to Nydes of the balance, $185, the return of the check to Goodstein, and a settlement of the criminal misdemeanor proceeding under the Pennsylvania Act of 1919, P. L. 70, § 1 (18 PS § 2402). It is not apparent that this n. s. f. check transaction had any connection with the assignment of the policy although embodied in the same contract, but if it had, the settlement thereof was legal as also was the consideration for the assignment. See Pennsylvania Act of 1860, P. L. 427, § 9 (19 PS § 491); Brown v. McCreight, 187 Pa. 184, 41 A. 45; Geier v. Shade, 109 Pa. 180.

Was the defendant entitled to have the issues of duress in the procuring of the contract of September 7, 1928, and of illegality of consideration for the assignment determined by a jury? I think not. There was no evidence that Goodstein executed said contract by reason of duress or that the consideration was illegal, hence if these issues were being tried by a jury the court would have been required to determine the same under the evidence in favor of the plaintiff. Western & Atlantic R. R. v. Hughes, 278 U. S. 496, 49 S. Ct. 231, 73 L. Ed. 473; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Herron v. Southern Pacific Co., 283 U. S. 91, 51 S. Ct. 383, 75 L. Ed. 857.

This court had jurisdiction of this case as a court of equity. The bill was filed under authority of the act of 1926 aforesaid, which provides: "That the district courts of the United States shall have original jurisdiction to entertain and determine suits in equity begun by bills of interpleader," etc.

In Liberty Oil Co. v. Condon National Bank et al., 260 U. S. 235, 244, 43 S. Ct. 118, 121, 67 L. Ed. 232, an action at law was brought. Defendant filed an answer admitting that it was a mere stakeholder and prayed that the two claimants for the fund in its possession be directed to interplead, which the court directed to be done. The Supreme Court, speaking by Mr. Chief Justice Taft, said: "We find that by defendant's answer and the court's order it became a bill of interpleader in equity. Thereafter the proceedings should have been so treated, both in the trial and appellate courts. The chancellor having sustained a bill of interpleader, disposed of the controversy between the claimants by directing any method of trial which would best and expeditiously accomplish justice in the particular case. * * * This well-established rule takes the issue here to be tried out of that class of issues in which there must have been a jury trial under the Seventh Amendment. Where it was one which the chancellor could readily dispose of in one proceeding, it was in the interest of economy, of expedition, and of justice that he should do so. This is in accord with the general rule in equity embodied in equity rule 23 (28 USCA § 723) that jurisdiction once assumed should be maintained to end the litigation."

For the foregoing reasons defendant was not entitled to have the issues raised by the pleadings determined by a jury. It might be added that by reason of the delay in the application of the defendant and the consequent injury to plaintiff by reason thereof (see findings of fact 12 and 13) that there is a strong reason for holding that the defendant waived her right to have the issues raised by the pleadings thus tried.

Let a decree be prepared and submitted in accordance with the foregoing findings of fact, conclusions of law, and this opinion.