## M. SHAFFER, ADMR., v. ADAM SPANGLER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS<br>OF YORK COUNTY.

Argued May 20, 1891—Decided October 5, 1891.<br>. [To be reported.]

(*a*) A creditor, having obtained a policy of insurance for $2,000 on the life of his debtor, and made some further advances, took out a second policy for $2,000, at the debtor's suggestion, agreeing, as a part of the arrangement under which it was applied for, to pay the latter's funeral expenses at his death.· The policies were collected on suits against the insurers:

1 In an action against the creditor by the administrator of the debtor, for money collected by the defendant upon the policies, it was error to in-

## Statement of Facts.

struct the jury that the rights of defendant under the second policy depended upon whether its amount was disproportioned to the indebtedness arising subsequent to the date of the first policy.

2. Both policies should have been considered together, the true question being whether an insurance of $4,000 was disproportioned to the whole indebtedness. existing when the second policy was issued, under the rule laid down in Ulrich v. Reinoehl, 143 Pa. 238; and if the defendant paid the funeral expenses of the deceased, they should be included in the indebtedness.

3. In the case of a recovery against the defendant, the counsel fees paid by him, in the suits against the insurance companies, should be deducted from the sums recovered therein; and it is immaterial whether such counsel fees were taken out of the fund by his attorneys before he received it, or were paid by him out of it after it came into his hands.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 237 January Term 1891, Sup. Ct.; court below, No. 83 August Term 1884, C. P.

In July 17, 1884, Margaret Shaffer, administratrix of the estate of Francis Shaffer, deceased, brought assumpsit against Adam Spangler, to recover certain moneys collected by the defendant upon two insurance policies on the life of said deceased. The defendant pleaded non-assumpsit, payment, etc.

At the trial, on November 12, 1889, the testimony tended to show the following facts:

In 1878, Francis Shaffer, the plaintiff's intestate, was indebted to the defendant in the sum of $400. To secure that sum, and a further loan of $100, Shaffer procured a policy upon his life for $2,000, in the Keystone Mutual Benefit Association of Allentown, Pa., and assigned the same to the defendant, who paid the expenses of effecting the insurance. About fourteen months afterwards, Shaffer suggested to the defendant that the policy might not prove a sufficient protection, as he did not think the company was paying in full, and proposed, if the defendant would promise to pay his funeral expenses and give him a respectable burial, to make application for another policy for the defendant's benefit. The defendant in the meantime had advanced other moneys to Shaffer, and supplied him with clothing, provisions, etc., to the extent of $200 or $250. Shaffer's proposal being assented to, an appli-

Charge of Court below.

cation was made for a policy upon his life to the Fidelity
Beneficial Association, of Elizabethtown, Pa. The policy so
applied for was issued in the sum of $2,000, payable to the
defendant as beneficiary, he paying the expenses. The cost of
keeping up the insurance on both policies was paid by the
defendant until Shaffer's death, which occurred on May 15,
1880. The defendant then paid the expenses of his funeral
and burial, amounting to about $65.

The insurance companies refused to pay the amounts of the
policies, and the defendant brought suits against them thereon.
In the suit against the Keystone association he recovered $650,
out of which his counsel retained $65 as attorney's fees. The
expenses of effecting and keeping up the insurance in that
company were $72.64. The suit against the Fidelity associa-
tion was settled by the payment of $1,050, one half the costs,
to wit, $57, being paid out of that sum. Counsel fees amount-
ing to $105, were retained by his attorneys in that case, the
amount which actually reached his hands being $888. The
expenses of that insurance were $75.

The testimony being closed, the court, GIBSON, P. J., charged
the jury in part as follows :

There has never been any limit made by law as to what
amount a debtor must owe before a life insurance can be taken
out upon him for that debt ; and, as regards the first claim
made in this case, it being the sum of $500, on account of the
$100 being given besides, there is no difficulty as regards that ;
there was an indebtedness of $500, and that is considered even
by the plaintiff, by the parties interested, as an insurable in-
terest sufficient to sustain this policy, and to sustain the right
of the defendant to hold the money that he received from the
company. But, on the second one, according to the defend-
ant's evidence before you, by lending money at different times,
or by giving money, and by furnishing articles of apparel at
certain times, a debt had been accumulated of some $150,
perhaps more ; and about six months after the first policy was
taken out for $2,000 in the Keystone Mutual, another insur-
ance was taken out in the Fidelity Beneficial Association, of
Lancaster county.

You will observe, first, that in the first policy of insurance,

it is taken in Frank Shaffer's name alone, and he assigned it for a certain consideration mentioned as $500 in the policy, assigned that policy to the defendant, Mr. Spangler. As regards the second one, he does not take out an insurance in his own name, that is, Frank Shaffer does not; but he takes that out himself, and makes Adam Spangler his beneficiary in it; he enters into a contract with this company that the company shall pay this money at his death to Adam Spangler.

But, the principle that I alluded to at first, that a party must have an insurable interest, applies to the beneficiary as well as the assignee; and the question, therefore, whether there was an insurable interest in Adam Spangler in that second policy depends upon the evidence there is before you as regarding that indebtedness. You will observe that, when I read the points of the counsel as praying the court for certain instructions to you, they all say, "if you believe;" so that the court leaves it to the jury to believe whether there was the indebtedness or not, according to the testimony that was produced before you by the administratrix of Frank Shaffer, and Adam Spangler; and whether it is a sufficient amount; and that is [not?] for the court to tell you as a matter of law.

The plaintiff requests the court to charge:

3. The counsel fees paid by the defendant for the collection of the moneys on the policies held by him on the life of Frank Shaffer, cannot be allowed as credits to the defendant, in this case, or deducted from the amount received by him on the said defendant on said policies.

Answer: This point is affirmed.[1]

The court is requested by the defendant to charge:

1. That if the jury believe from the evidence that Frank Shaffer assigned the policy for $2,000 in the Keystone Mutual Benefit Society, upon his own life, to Adam Spangler, at a time when he was indebted to said Spangler in the sum of $400 on a note, as testified to by the plaintiff's witness; and that said assignment was intended by the parties to be in payment of said indebtedness, and in payment of an additional $100 received by him from Spangler, then said Adam Spangler had a sufficient insurable interest in the life of Shaffer to sustain said policy; and if the jury further believe that after said assignment of said policy Adam Spangler advanced additional

moneys to the amount of $150 to said Shaffer, and that said
Shaffer was further indebted to said Spangler in the sum of.
$250 for clothing, provisions, etc., furnished him by the de-
fendant, and that said Spangler had also agreed to pay the
funeral expenses of said Shaffer, upon his death, then the tak-
ing out of an additional policy for $2,000 on said Shaffer's
life, in the Fidelity Beneficial Association, payable to Adam
Spangler, in payment of said last named indebtedness, was
based on a sufficient insurable interest of Spangler in Shaffer's
life ; and the transaction was not a wagering contract in the
eye of the law, and the verdict should be for the defendant.

Answer: If the jury believe the facts as stated in this point,
it is affirmed.

3. The disproportion between the amount of the second policy
taken by defendant on the life of Shaffer, to wit, $2,000, and
the amount of the alleged indebtedness of Shaffer to Spangler
at that time, if believed by the jury, to wit, $150 for moneys
advanced, $250 for clothing and provisions furnished, and the
promise to pay funeral expenses of Shaffer by Spangler, was
not so great as to constitute the transaction a wagering con-
tract as matter of law ; and if the same was at the time intended
to be in payment of said indebtedness, the defendant is en-
titled to retain the moneys received thereon, and the verdict
of the jury should be for the defendant, as to said moneys.

Answer: This refers to the second policy.  The answer is,
if the jury believe the facts in this point, the point is affirmed.

5. If, for any reason, the verdict of the jury shall be for the
plaintiff, the defendant is entitled to retain out of the moneys
received on this insurance the following on said policies :
(1) The amount of the indebtedness of Frank Shaffer to Adam
Spangler, with interest to the date of the receipt of the moneys
on said policies ; (2) all entry fees, dues, assessments, costs
and expenses of taking out and keeping in force said policies ;
(3) the sum retained by his attorneys for collection by suit of
the moneys recovered on said policies ; (4) funeral expenses of
Frank Shaffer ; (5) moneys paid the widow ; (6) the amount
of costs paid by him in the suits on which he recovered the
moneys.

Answer: This point is affirmed, with the exception of the
part submitted as regards the attorney's fees by the plaintiff ;

Arguments.

with that exception, which would include also the costs paid by him in the suits on which the amounts were recovered.[2]

7. Under the law and evidence in this case, the verdict of the jury should be for the defendant.

Answer: This point is affirmed, if the jury believe there was the indebtedness as testified to by the plaintiff, on the second policy of insurance.[3]

The jury returned a verdict for the plaintiff for $937.54. A rule for a new trial having been discharged, LATIMER, P. J., and judgment entered, the defendant took this appeal, assigning for error, inter alia:

1. The answer to the plaintiff's point.[1]

2, 3. The answers to the defendant's points.[2] [3]

4, 5. The admission of certain papers not set out in the assignments.

6. The refusal of a motion for a compulsory nonsuit.

*Mr. N. M. Wanner*, for the appellant:

The second insurance was not an independent transaction, disconnected from the first. The two policies were practically one insurance, based on the general indebtedness, creating an insurable interest sufficient to sustain them both. The authorities show conclusively that the disproportion between $4,000 of insurance in two tottering mutual companies, to an indebtedness of over $700, with the addition of funeral expenses amounting to $65, is not so great as to constitute the transaction a wagering contract: Grant v. Kline, 115 Pa. 618; Corson's App., 113 Pa. 438; Cooper v. Shaeffer, 20 W. N. 123. In every case, the question turns on the bona fides of the transaction: Corson's App., supra; Scott v. Dickson, 108 Pa. 6; Cunningham v. Smith, 70 Pa. 450; American Ins. Co. v. Robertshaw, 26 Pa. 189; Ætna Ins. Co. v. France, 94 U. S. 561; Conn. Mut. Ins. Co. v. Schaefer, 4 Otto 457. The bona fides of the transaction being established, there can be no recovery of the moneys by the personal representatives of the insured, especially where they are not parties to the contract, and the policy is payable, on its face, to the defendant. In any event, the defendant is entitled to retain the amount expended for the funeral of the deceased: Seigrist v. Schmoltz, 113 Pa. 326. He is also entitled to the amount of the counsel fees and

Opinion of the Court.

costs in the suits on the policy. He should not be held accountable for more than he actually received for his own use.

*Mr. Edward Chapin,* for the appellee :

It is not the law of this state that the bona fides of the transaction is the controlling element in such cases as this : Seigrist v. Schmoltz, 113 Pa. 326. The jury, however, have found that no such indebtedness as that upon which the policy is alleged to have been based, was ever contracted. No case is cited to show that the defendant is entitled to credit for counsel fees, nor can any case be produced in which credit has been allowed for money so expended. The proper credits are the expenses of effecting the insurance, the payments for premiums, annual dues and mortuary assessments, together with interest on the same. The only case cited to show that funeral expenses can be deducted as against the administrator, is Seigrist v. Schmoltz, 113 Pa. 326, and in that case it appears that there was a stipulation in the certificate of membership that $200 should go to pay the funeral expenses of the insured ; hence the claim to " retain " the amount of the funeral expenses paid did not arise. The insurable interest is that which existed at the time of effecting the insurance, not that which may exist at the time of the death of the insured: Scott v. Dickson, 108 Pa. 6. It would have been clear error to affirm the defendant's seventh point, without the qualification which the court added to it.

OPINION, MR. CHIEF JUSTICE PAXSON :

The appellant was the holder of two policies of two thousand dollars each upon the life of Frank Shaffer. That he was a creditor of Shaffer at the time the first policy was taken out, to the amount of five hundred dollars, was not disputed, nor was any serious contention raised as to excess of insurance. The second policy was taken out some time after the first, and the defendant alleges that it was done at the request or suggestion of his debtor. He testified : " Why, he (the debtor) came to me, and told me that he thought that the other policy would not pay me for what I had done for him, and he thought I had ought to take out another one ; and if I would promise to go to the expense of burying him, and see that he was nicely

Opinion of the Court.

buried, that I should take out another policy, because he did not think these other companies were paying in full, and I would run that risk; and he said he thought I ought to take out another one, and in that way pay it for him." There was evidence that the defendant had advanced Shaffer as much as one hundred and fifty dollars, between the first and second policies, besides furnishing shoes and some other matters to his family; that the whole of these advances amounted to from two hundred dollars to two hundred and fifty dollars; and that after Shaffer's death the defendant paid his funeral expenses, about sixty dollars or sixty-five dollars more.

This suit was brought by Mrs. Shaffer, as administratrix of her husband, to recover the balance received by the defendant on the two policies over and above the debt and interest and costs of the insurance. The court below held that as to the first policy there could be no recovery, as the debt proved was ample to take it out of the speculative class; and that, as to the second policy, they must also find for the defendant, if they believed there was the indebtedness, as testified by the defendant, on the second policy. The jury found for the plaintiff the amount collected upon the second policy. See third assignment. It would not have been error to refuse the defendant's seventh point, embraced in this assignment, for the reason that it prayed for a binding instruction. The question of the existence and amount of the indebtedness, upon which both policies were based, could not properly have been withdrawn from the jury. But we think the learned judge erred in separating the policies, thus making the second policy depend upon the subsequent indebtedness. If, in point of fact, the first policy was insufficient to cover the debt, the defendant had the right to take out an additional policy for that purpose, and its validity must be measured by the whole amount of existing indebtedness. Thus, the question upon another trial will be whether an insurance of four thousand dollars is disproportioned to the whole indebtedness existing at the time the second policy was issued; and if the defendant agreed that, in consideration of the second policy, he would pay Shaffer's funeral expenses, and has actually paid them, we see no reason why the amount thereof should not be included in the indebtedness. It is true, it was not an existing debt at that time,

Opinion of the Court.

but it was an obligation assumed for Shaffer's benefit, and for that of his family, and, having been fulfilled, should be recognized. Whether the insurance was so disproportioned to the debt as to make it a speculative or gambling transaction must be determined according to the rule laid down in Ulrich v. Reinoehl, 143 Pa. 238.

As the case must go back for a re-trial, it is proper to say that we think the learned judge erred in holding that the amount paid by defendant for counsel fees, in collecting the money from the insurance companies, could not be deducted from the amount in his hands in case of a recovery by the plaintiff. The money was collected by suit, and a portion only of the amount of the policies paid. The employment of counsel was therefore a necessity. The payment of the money was the result of their efforts; and we think the amount paid them, as fees for such services, is properly deductible from the fund realized. This was a suit for money had and received, and the defendant is not properly chargeable with what never came into his hands. It matters not whether the counsel fees were deducted from the fund before he received it, or whether he paid them out of said fund after it came into his hands. The effect is the same, and the defendant can only be charged with the net proceeds.

This disposes of the first and second assignments. The third has been already sufficiently referred to. The fourth and fifth do not conform to the rules of court, while the sixth relates to a subject that is not assignable as error. The remaining assignments do not require discussion.

> Judgment reversed, and a venire facias de novo awarded.