## Thomas McHale *v.* Bridget McDonnell, Administratrix of the estate of Frank McDonnell, deceased, Appellant.

*Practice, C. P.—Special verdict—Judgment.*

A judgment cannot be entered upon a special verdict made up of questions propounded to and answered by the jury, if the answers to some of the questions are irreconcilable with answers to others; but the verdict must be construed upon the questions and the answers; and its construction cannot be affected by what was said by the trial judge in explanation of one of the questions.

*Insurance—Life insurance—Assignment of policy—Erasure—Evidence.*

An assignment of a policy of life insurance showed upon its face these words over which a pen line had been drawn: "All except $500 of the amount of this policy to be returned to my executors or administrators when the said policy becomes a claim." There also appeared annexed to the policy a second assignment, dated more than a year after the first, in which these words were interlined "as his interest may appear." The insurance company paid the money into court, and a feigned issue was framed to determine the ownership of the money, in which the assignee was plaintiff, and the administratrix of the assured was defendant. The only person, except the assignee of the policy, who was present at the assignment and living at the time of the trial, testified that the erasure was made before the assignment was executed, and that it was made for the purpose of giving the plaintiff, who was the assignee of the policy, an absolute ownership in the policy. The defendant claimed that the policy

had been assigned to secure a debt which was only one third of the amount of the sum named in the policy. *Held*, (1) that the burden of showing that the erasure was made before the execution of the assignment was upon the plaintiff; (2) that the second assignment was not in accord with the plaintiff's contention respecting the time of the erasure, nor absolutely inconsistent with the presence of the limitation clause in the first assignment when the second was made; (3) that if there had been no erasure the second assignment might be regarded as a qualification of the limitation in the first, and the plaintiff holding both assignments would be entitled to receive from the proceeds of the policy the amount of the assured's liability to him.

*Insurance—Life insurance—Assignment of policy to creditor—Insurable interest.*

Where a policy for $2,000 is assigned to a creditor to secure a debt of $700, and there is no evidence showing what the assured's expectancy of life was when the policy was issued, or when it was assigned, there is nothing in the disproportion between the amount of the policy and the amount of the debt which will defeat the creditor's right to recover the whole amount of the policy.

Argued Feb. 24, 1896. Appeal, No. 354, Jan. T., 1895, by defendant, from judgment of C. P. Lackawanna Co., Sept. T., 1894, No. 887, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Reversed.

Feigned issue to determine the ownership of a policy of life insurance. Before ARCHBALD, P. J.

At the trial it appeared that on January 22, 1877, the assured, Frank McDonnell, executed an assignment of a policy of life insurance for $2,000 to Thomas McHale. In the assignment was written these words over which a pen line had been drawn: "All except five hundred dollars of the amount of this policy to be returned to my executors, or administrators when the said policy becomes a claim." On April 6, 1878, the assured executed another assignment to Thomas McHale of the same policy in which these words were underlined: "As his interest may appear." McHale claimed the whole amount of the policy. The defendant, who was the administratrix of McDonnell, claimed that the assignment was to secure a debt.

The court charged in part as follows:

In January, 1869, Frank McDonnell took out a policy of insurance in the Northwestern Mutual Life Insurance Com-

pany upon his own life, in the sum of $2,000.   He has recently died, so that the amount of the insurance became payable to the party who was entitled to it.   Two claims were made upon the company, one by the plaintiff here, Thomas McHale, and the other by Mrs. McDonnell, the administratrix and widow of Frank McDonnell.   The company being willing to pay the money, but not knowing to whom to pay it, obtained leave of court and paid into court the amount of money which was due upon it, deducting some premium notes that had been given, and then this issue was framed to decide to whom the money belonged.   The amount paid into court was $1,804.15, and was paid in on the 13th of August of this year.

Now your verdict is to determine the questions at issue between these parties.   Those questions they have drawn up themselves and agreed upon, and they have been formulated in this paper which I hold in my hand, and which will go out with you.

The first question being: Did Frank McDonnell, on the 22d day of January, 1877, make an assignment of a certain policy of insurance, dated the 15th day of January, 1869, on the life of Frank McDonnell, for the sum of $2,000, to secure a loan of $700, and is the alleged assignment held by Thos. McHale of said policy genuine?   Thomas McHale affirms that Frank McDonnell did so assign the said policy of insurance to him to secure the said loan of $700, and that the assignment is genuine. Bridget McDonnell, administratrix of the estate of Frank McDonnell, deceased, denies this.

Second: Did Frank McDonnell, on the 22d day of January, 1877, the date of the alleged assignment, owe Thomas McHale the sum of $700, or any sum whatever?   Thomas McHale affirms that Frank McDonnell did owe the said sum or said debt. Bridget McDonnell, administratrix of the estate of Frank McDonnell, deceased, denies this.

Third: Is Thomas McHale entitled to the sum of $1,804.15, the money paid into court, or any part thereof, under and by virtue of said alleged assignment of the policy of insurance, dated the 15th day of January, 1869, on the life of Frank McDonnell.   Thomas McHale affirms that he is entitled to the whole of said sum.   Bridget McDonnell, administratrix of the estate of Frank McDonnell, deceased, denies that Thomas McHale is entitled to any part of said sum.

There appears indorsed upon the policy in dispute an assignment. It has been proved that the signature at the foot of this assignment is that of Frank McDonnell, the person who took out this policy, and who owned it at that time. This has been proved by the testimony given yesterday, James McHale, himself, swearing that he was personally present and saw Frank McDonnell sign and execute this, and also proof being made by the testimony of young Mr. Stark of the signature of his father, C. S. Stark, who appears as a witness to this assignment. If you believe that evidence, and there is no contradiction or disproof of it, you can hardly fail to find that an assignment of this policy was executed by Frank McDonnell, in which he, for a valuable consideration, apparently, undertook to transfer it to Thomas McHale, the plaintiff. If you find that fact from this evidence, it seems to me that the first question at issue between these parties, and which they submit to you, would have to be answered in the affirmative, that question being whether Frank McDonnell did make an assignment of this policy, and whether it was genuine. It is true that in that question put to you appears the words, "to secure a loan of $700," but, as I understand it, the real question intended to be submitted to you by that part of this issue is, whether this assignment was actually executed, and whether it is a genuine assignment.

There are other matters growing out of this that are in dispute, and that are involved in the other questions submitted to you, and the case principally turns upon whether this assignment, which was so made, intended to pass the entire title and property, and the ownership was an absolute one, or whether it was merely intended to secure something then advanced. The testimony of James McHale is, as I have said to you, that he was present when this assignment was executed. He went to the office of Mr. Stark with his brother, Thomas McHale, the plaintiff here, and I believe also in company with Frank McDonnell, and at that time Mr. Stark filled up this assignment, and also added the words which now appear erased at the foot of the printed part of the assignment blank, upon the back of this policy. And James McHale says that when that was done, and read over to his brother Thomas, he objected to it, and said that he didn't want it in that way ; that he wanted to have it an absolute sale of the policy, or else he would not take

it, or words to that effect; and that then, and thereupon, Mr. Stark drew his pen through these written words, and it was executed by Frank McDonnell, thus standing as an absolute assignment of this policy, and the amount covered by it.

Now, the question is whether you believe that. Is that the actual transaction as it was intended? Was this an absolute transfer, or merely to stand as security to whatever might be due between these parties?

As a further part of that transaction, however, I also should say that James McHale says that there was some indebtedness due from Frank McDonnell to Thomas before that, and that at that time Thomas advanced to Frank $250 or $225, which James's mother, who was also present, let him have then and there, and that Thomas also undertook to assume and pay a note of $135, which Frank McDonnell owed to him, James McHale, and that that was the consideration of the assignment, amounting, as I remember his testimony, to something like $670. There has been some wavering between the amount of $670 and the amount of $700.

This erasure here is not so but that we can read it with some little care, and if the words were not intended to be erased at that · time, you can see that the assignment was not intended to be absolute, but only conditional. The words scratched out are, " all except five hundred dollars of the amount of this policy to be returned to my executors or administrators when the said policy becomes a claim."

The burden is upon the plaintiff to satisfy you that these words were erased or scratched out at the time of the execution. If the plaintiff has not satisfied you upon this point, then these erasures are to be taken against the plaintiff. The plaintiff must show that they were made at the time, or else we are to read the words as though they had not been erased. It is for you to decide upon that point, whether the erasures were made at the time or whether they have been made subsequently, remembering where the burden lies upon that—and upon that depends the question, of course, whether the transaction was intended to be absolute or not.

Upon that we have perhaps other testimony coming subsequently, for instance, James Fitzpatrick, who is called here, says that along about in 1876 or 1877, which would be some-

time prior to this transaction, Frank McDonnell wanted to sell a policy of insurance to him, and that afterwards he told him that he had sold the policy to Thomas McHale, his brother-in-law, and he mentioned the fact that this policy was for $2,000. Mr. Fitzpatrick cannot say what policy was referred to, except the fact that it was a policy for $2,000, the amount given in this, but taking all the circumstances together, it is a question for you whether, if that statement was made to Mr. Fitzpatrick, it did not refer to this which is of exactly the same amount, and which we find soon after that was transferred, whether absolutely or conditionally, to the plaintiff, Thomas McHale. If that statement was made to Mr. Fitzpatrick, and if you find that it referred to this policy, that would go to confirm the contention of Thomas McHale here, that the policy was intended to be absolutely assigned, or as he claims, sold to him.

On the other hand, and contradicting James McHale, we have the testimony of the defendant, Mrs. McDonnell, the widow, and her daughter, Belinda, who say that James McHale has said that there was some scratching done upon this policy since the transaction; that he called at Mrs. McDonnell's and there was a conversation between Mrs. McDonnell and her brother James, since the death of Frank, the husband, and that James said he could put most of the money in Mrs. McDonnell's hands; that there was some scratching done on the back of the policy. She wasn't able to say that James mentioned when this scratching was done, but her daughter Belinda says she was in the next room, and heard the conversation, and that James said the scratching had been done since the transaction, or since the assignment was made. If you believe that testimony of Mrs. McDonnell and her daughter, it would contradict James McHale on a very material point, as to whether the scratching was made in Mr. Stark's office when they were all together, and when they were arranging what the contract between them should be, or whether it has been made since Frank McDonnell's death; since the transaction. If you believe that that testimony so far contradicts James McHale in his present statement as to discredit the testimony which he has given here, then you would be entitled upon that to throw out his testimony, and of course that would do away with the testimony on which the plaintiff relies to explain these erasures; really the whole case turns upon that question.

In order to make the transaction valid between these parties, however, there is a further question, as to whether there was an indebtedness between these two parties, Thomas McHale and Frank McDonnell, at the time. The law is such that no party is allowed to speculate upon the life of another. No one may take out a policy of insurance, or hold a policy of insurance upon the life of another person, unless he has some interest in that life. A child has an interest in the life of its parent; a wife in that of her husband; a creditor has an insurable interest in the life of his debtor, because it is only upon the continuation of that life that he has the chance to get the payment of his debt. And what cannot be directly done as by taking out a policy of insurance upon the life of another without having an interest in that life cannot be indirectly done by taking an assignment of a policy previously existing upon the life of a certain person. So, in this case, Thomas McHale could not acquire any interest by way of assignment of this policy, unless he stood in some relation that would entitle him to some interest in the life of Frank McDonnell. The only interest set up is that of a creditor. He claims that, at the time this policy was assigned to him, there was already a debt between them, and that he advanced at the time the assignment was made $250 or $255, and assumed a note of $135 due from Frank McDonnell to his brother James. Now is this the fact? The burden is upon him that it is. He says there was this debt and he must prove it to your satisfaction. He proves it, if you believe James McHale. James says, as I have already in brief referred to it, that all this was done, and was the basis of the assignment; that there was $670 or $700, I believe, of a consideration for this transfer; a debt previously existing, which would amount to about $200, [if we assume the total to be $670 or $700, and a note of $133, which he held against Frank, and $250 or $255 that was then and there turned over. If these facts be so, this would furnish a full and sufficient consideration for the transfer, and would give Thomas McHale such an interest in the life of Frank McDonnell as would entitle him to take a transfer of this insurance policy. But unless that be so he would not have an interest and there would not be a sufficient consideration to warrant the transfer.] [8]

There is some contention here that really this was not a loan

or a debt between Thomas McHale and Frank McDonnell, but between old Mrs. McHale and Frank McDonnell, her son-in-law. The evidence upon that is very slight. It is a fact, however, that she was present upon the occasion of this transfer, and gave $250 or $255, whatever was the cash money which passed between Thomas and Frank, and there is also a statement, according to the testimony of Mrs. McDonnell, made by Thomas McHale, that old Mrs. McHale advanced $700 on the policy, and that the policy was given to her as security. That is some but very slight testimony. It does not correspond at all with the written assignment, which we find here on the back of the policy, that written assignment being to Thomas McHale, and not to his mother, and being signed by Frank McDonnell, so that if it has any validity or force at all and is to be read according to its terms, whether you take those which are scratched out, or those which are written and stand there still, it is not at all in accordance with a loan from old Mrs. McHale to Frank McDonnell. The transaction, as it stands apparently by this assignment as well as by the subsequent assignment which was put in evidence and which was executed, is a transfer of Frank McDonnell to Thomas McHale. Old Mrs. Mary McHale is not mentioned in it at all. So I say the evidence is very slight upon that, still I will submit it to you as a question of fact to be passed upon by you, whether the transaction between the parties then and there was one between old Mrs. McHale and Frank McDonnell, or between Thomas McHale and Frank McDonnell. If it was between Mrs. McHale and Frank, plaintiff could not take any interest under this policy, if you should find that to be the fact, but I caution you that the testimony upon that is quite slight.

[Bearing upon the question whether this was intended as an absolute assignment or a conditional one, I perhaps have omitted one or two things that I ought to refer to, and one is a fact that it is claimed Mr. McDonnell had attempted to realize upon this policy of insurance, not only while attempting the sale to Mr. Fitzpatrick, which he testified to, but by surrendering it to the company. It is claimed that before this he had had that in mind, and in confirmation of that we find indorsed upon the back of the policy apparently a surrender of that; and signed apparently in the name of Frank McDonnell.] [5] [And we

also have this subsequent assignment executed in April, 1878, but with regard to that that assignment is not an unqualified one.  There the words are interlined, "as his interest may appear."  That would compel him to show an interest, and only to the extent of the interest he showed would he be entitled to claim under that assignment.  It would not, it seems to me, take out of this original assignment the condition attached to it, if there was that condition intended to be originally attached.] [4]

Now, gentlemen, for your further assistance in the disposition of this case, I have drawn up questions, including the questions or inquiries drawn up by the parties themselves, and some additional ones which I shall ask you to answer, and write your answer down at the end of each question, and that will be virtually the verdict which you will bring in here.

[First question: "Did Frank McDonnell on the 22d day of January, 1877, make an assignment of a certain policy of insurance dated the 15th day of January, 1869, on the life of Frank McDonnell, for the sum of $2,000, to secure a loan of $700, and is the alleged assignment held by Thomas McHale for said policy of insurance genuine?"  That you can answer, yes or no.  If you answer it yes, you will confirm and find that the assignment which is put in evidence was executed.  I do not understand that your finding will mean anything more than that, that it was executed by Frank McDonnell, and that that was his signature.  If you say "no," then you will say that he did not execute that assignment.  I do not see how you could very well say that under the evidence.] [6]

Defendant's point, among others, was as follows: "That if the jury believe that Thomas McHale loaned $670 to Frank McDonnell and took an assignment of the insurance policy to secure said loan, and that Frank McDonnell continued to pay the premiums on said policy by giving premium receipt notes and otherwise, and as the evidence discloses that no premiums were paid by Thomas McHale, and that he did not loan any further sums to Frank McDonnell, or incur any further expense on his account, then the amount of the insurance, to wit, $2,000, was disproportioned to the whole indebtedness existing when the second assignment was made, and the plaintiff became an assignee without an insurable interest, because the policy is a wager policy in his hands, and he cannot recover in this case.  *Answer:* I refuse this point without reading it. [2]

Plaintiff's point among others was as follows: If the jury believe from all the evidence that Frank McDonnell in consideration of the sum of $700, on the 22d day of January, 1877, absolutely sold and assigned the policy of insurance in evidence to said Thomas McHale, then the plaintiff is entitled to recover the whole amount of $1,804.15. *Answer:* This is a correct statement of the law; I affirm this point. [3]

The jury returned the following special verdict:

1. Did Frank McDonnell on the 22d day of January, 1877, make an assignment of a certain policy of insurance, dated the 15th day of January, 1869, on the life of Frank McDonnell, for the sum of $2,000 to secure a loan of $700, and is the alleged assignment held by Thomas McHale for said policy of insurance genuine? Answer of jury: Yes.

2. Did Frank McDonnell on the 22d day of January, 1877, the date of the said alleged assignment, owe Thomas McHale the sum of $700, or any sum whatever? (If you answer the question, "Yes," then state how much he owed the said Thomas. McHale.) Answer of jury: Yes, $700.

3. Is Thomas McHale entitled to the sum of $1,804.15, the money paid into court, or any part thereof, under and by virtue of said alleged assignment of the policy of insurance dated the 15th day of January, 1869, on the life of Frank McDonnell? You are to answer this by giving an answer to the following inquiries:

(*a*) Were the words which are written at the end of the printed part of the assignment on the back of the policy scratched out or erased as they now appear at the time the assignment was signed by Frank McDonnell at Stark's office, or have they been erased since then? Answer of jury: Erased at the time.

(*b*) Was the policy assigned to Thomas McHale simply to secure the payment of a debt due him from Frank McDonnell, or assumed by him at that time? Answer of jury: No.

(*c*) Or was the policy absolutely sold to Thomas McHale, in consideration of the debt, if any, then due him from Frank McDonnell, including the money, if any, then advanced, and the note of his brother of $135, if any? Answer of jury: Yes.

(*d*) Did Frank McDonnell owe Thomas McHale at the time the assignment was made? If so, how much, and what would

it now amount to including the previous debt, if any, between them; the amount advanced in cash at the time; and the note of James McHale, if any, assumed by Thomas; and calculating interest up to August 13, 1894? Answer of jury: Seven hundred dollars with interest, giving the defendant the balance.

Rule for new trial discharged, and judgment entered in favor of plaintiff in the sum of $1.804.15.

*Errors assigned* were, (1) in receiving the special verdict and in entering judgment thereon, the answers to the questions therein being conflicting; (2–8) above instructions, quoting them.

*A. A. Vosburg* and *W. S. Hulslander*, for appellant.—When one part of the contradictory findings in a special verdict could support the judgment and another part would necessarily upset it, the cause should be remanded for a new trial: 2 Am. & Eng. Ency. of Law, 903; Learned v. Castle, 78 Cal. 454; Carver v. Carver, 83 Ind. 368; Darling v. West, 51 Iowa, 259; Kerns v. McKean, 65 Cal. 411; Randall v. Hunter, 66 Cal. 512; Gilman v. Curtis, 66 Cal. 116; Annas v. Milwaukee R. R., 67 Wis. 46; Pint v. Buaer, 31 Minn. 4; McCormick v. Ins. Co., 163 Pa. 184; Loew v. Stocker, 61 Pa. 347.

The court can only decide the question as to whether the insurance is disproportioned to the debt or not when it is palpably so; in all other cases it is a question for the jury to say whether the debt and the insurance are properly proportioned or not, and the question must be submitted to them: Ulrich v. Reinoehl, 143 Pa. 238; Schaffer v. Spangler, 144 Pa. 223; Grant v. Kline, 115 Pa. 618; Cooper v. Shaeffer, 20 W. N. C 123.

If the language of the charge tends to mislead the jury it is ground for reversal: Fawcett v. Fawcett, 95 Pa. 376; Bisbing v. Bank, 93 Pa. 79; Musselman v. R. R., 2 W. N. C. 105; Sommer v. Gilmore, 168 Pa. 117; R. R. v. Schuster, 113 Pa. 412.

The court cannot consider any other facts than those found and stated by the jury in the special verdict: Tuigg v. Treacy, 104 Pa. 493.

The judgment entered on the special verdict must be the logical and legal conclusion drawn from what the jury has placed

upon the record as the specific, exact and complete facts in the case: Com. v. Grimes, 116 Pa. 450; R. R. v. Evans, 53 Pa. 250.

The court had no power to so mold the verdict as to make it accord with what he may regard as the logical effect of the finding of the jury: Clouser v. Patterson, 122 Pa. 372; Beates v. Retallick, 23 Pa. 288.

*Joseph O'Brien, John F. Shea* and *John P. Kelly* with him, for appellee.—There is no evidence in this case showing the expectation of life of Frank McDonnell at the time the assignment was made nor his condition of health at that time.

The case of Ulrich v. Reinoehl, 143 Pa. 238, does not overrule, change or modify the ruling in Grant v. Kline.

It is not error for the judge to omit to charge the jury on a particular point of law unless asked to do so at the trial: 11 Am. & Eng. Ency. of Law, 258; Burns v. Sutherland, 7 Pa. 103; Bain v. Doran, 54 Pa. 124; Fisher v. Filbert, 6 Pa. 61; Seigle v. Louderbaugh, 5 Pa. 409; Serfass v. Driesbach, 141 Pa. 142.

Opinion by Mr. Justice McCollum, May 28, 1896:

The contention in this case relates to the ownership of the proceeds of a policy of insurance on the life of Frank McDonnell. After his death in January, 1894, Bridget McDonnell, his widow and the administratrix of his estate, claimed the money due on the policy, and her brother, Thomas McHale claimed it. The insurance company conceding its liability paid the money into court, and this issue was framed for the purpose of determining to whom it belonged. The plaintiff in the issue based his claim to the money on the assignment of the policy to him by the insured on the 22d of January, 1877. This assignment embraced a provision which clearly showed that the assignee would not be entitled to receive under it, for himself, more than $500. As this provision appeared to have been erased, it became important to ascertain whether the erasure was made before the assignment was executed by the assured and witnessed by the attorney who drew it, or after the execution and delivery of it. The burden of showing that the erasure was made before the execution of the assignment was upon the plaintiff, and the witness relied on to show that it

was so made was his brother, James McHale. He testified distinctly that he was present when the assignment was read to the parties, and that the erasure was made before it was signed. It seems from his testimony that the erasure was made to overcome the objection of his brother Thomas to the provision in the assignment which limited the latter's interest in the policy to $500. But his statement of the objection was not very clear. On his direct examination he said in substance that the assignment as read was not satisfactory to Thomas while in his cross-examination he said that the only fault found with it was that the amount was not correctly stated in it, and in his redirect examination he added that Thomas said "he wanted the policy or nothing." The witness did not testify nor the plaintiff claim on the trial that the agreement made by the parties in regard to the transfer of the policy was modified after the assignment of it was prepared and read to them. If under the agreement the plaintiff was to become the absolute owner of the policy it is difficult to account for the presence in the assignment of the limitation clause. If on the other hand it was agreed that the policy should be assigned as security for a loan or debt, the limitation was proper, provided the amount mentioned in it was sufficient to accomplish the purpose of the transfer. It was not to be presumed that the assured caused to be written in the assignment a provision in plain violation of the agreement, nor that the plaintiff objected to the presence there of a provision in exact accord with it. Satisfactory proof that the limitation in the assignment was in violation of the agreement would have strengthened the plaintiff's contention in regard to the erasure, and like proof that the limitation corresponded with the agreement would have weakened it. But as the plaintiff was not a competent witness to matters occurring between him and the assured, and as three of the five persons who were present when the assignment was made were dead, it is probable that the parties furnished all the evidence on this point they were able to produce. It seems to us however that there was an item of evidence which was entitled to more consideration, in connection with the question of the erasure, than it received, and in regard to which the charge was inadequate and misleading. We refer to the second assignment which appears from its date to have been made on the 6th of April, 1878. It was

found in the plaintiff's possession, attached to the policy, and proved to be genuine. Why was this assignment made to and held by the plaintiff if the prior assignment made him the absolute owner of the policy? It certainly was not in accord with the plaintiff's contention respecting the time of the erasure nor absolutely inconsistent with the presence of the limitation clause in the first assignment when the second was made. If there was no erasure the second assignment might be regarded as a qualification of the limitation in the first, and the plaintiff, holding both assignments, would be entitled to receive from the proceeds of the policy the amount of the assured's liability to him. In other words he would receive and be restricted to the amount the assignments were intended to secure, whether that amount was more or less than the sum mentioned in the first assignment. That sum may have been increased by accumulations of interest, and other loans, or reduced by payments, made on account of it.

It is worthy of mention in this connection that while the assignment was drawn and witnessed by a competent and reliable lawyer he did not note thereon that the erasure was made before signing. Of course if the erasure was made after the assignment was executed and without the consent of the assured there can be no recovery upon or by virtue of it.

The special verdict, on its face, did not authorize the judgment entered upon it. It embraced material findings irreconcilable with each other. The inconsistency in the verdict appears in the answers to questions 1, (*b*) and (*c*). The answer to the first question clearly involved a finding that the assignment of January 22, 1877, was made " to secure a loan of $700," while the answers to questions (*b*) and (*c*) constituted a finding that the policy was absolutely sold and assigned to the plaintiff in consideration of debts of the assured due to or assumed by the plaintiff and of money paid by him at that time. It is said that the inconsistency in the findings was attributable to a mistake in framing the first question, which it is alleged was intended to be limited to the single inquiry whether the assignment was genuine. But no such intention was apparent in the question, and if it existed as claimed the question should have been amended so as to conform to it. There was no warrant in the question for eliminating from it, in the general charge, the words,

" to secure a loan of $700." The questions as written were sent out with the jury, and, with the answers to them, constituted the verdict. The verdict must be construed upon the questions and answers which compose it. We think therefore that what the learned trial judge said in his charge in regard to the meaning of the first question cannot be allowed to affect the construction of the verdict rendered in this case.

We cannot sustain the 2d, 3d, and 8th, specifications. The rulings complained of in them were in exact accord with the decision of this court in Grant's Admrs. v. Kline, 115 Pa. 618. In that case the policy was for $3,000 and the amount paid for or on account of it was $743. In this case the policy was for $2,000 and the amount claimed for it was $700. In this case there was no evidence showing what the assured's expectancy of life was when the policy was issued or when it was assigned. There was nothing therefore in the disproportion between the amount of the policy and the alleged consideration for the assignment of it which would have warranted the court or jury in denying to the plaintiff a recovery in accordance with his contention. Grant's Admrs. v. Kline was not overruled by Ulrich v. Reinoehl, 143 Pa. 238, or by Shaffer v. Spangler, 144 Pa. 223.

We discover no error in the instruction complained of in the 5th specification or in the ruling which is the subject of complaint in the 7th nor anything in either which requires discussion.

In accordance with the foregoing views we sustain 1st, 4th and 6th specifications, and overrule the 2d, 3d, 5th, 7th and 8th.

Judgment reversed and venire facias de novo awarded.